ELDRIDGE, Plaintiff in Error, v. STEAMBOAT WILLIAM CAMP-BELL, Defendant in Error.

1. A complaint against a steamboat, under the boat and vessel act, verified as follows: " A. B., attorney for plaintiff, makes oath and says he believes the foregoing petition and the matters therein as stated are true. A. B., attorney for plaintiff," is insufficiently verified.

*Error to Kansas Court of Common Pleas.*

*Bouton*, for plaintiff in errorr.

I. The statement was verified as required by law, the attorney Robinson being presumed to be a *credible* person. (R.

C. 1855, p. 305, § 4; id. p. 1234, § 20.) The rulings in Bridgford v. Steamboat Elk, 6 Mo. 356, and Hamilton v. Steamboat Ironton, 19 Mo. 523, were unauthorized by the statute. The affidavit is good under the new code.

RICHARDSON, Judge, delivered the opinion of the court.

The affidavit to the complaint in this case was made by the plaintiff's attorney, and is as follows: "J. W. Robinson, attorney for plaintiff, makes oath and says he believes the foregoing petition and the matters therein as stated are true. J. W. Robinson, attorney for plaintiff." It will be observed that the affidavit does not disclose the agent's means of knowing the facts stated in the complaint; and the only question in the case is whether the affidavit is on that account defective. The point has been expressly ruled by this court in the cases of Bridgford v. Steamboat Elk, 6 Mo. 356, and Hamilton v. Steamboat Ironton, 19 Mo. 523. The case of Bridgford v. Steamboat Elk was decided in 1840, and gave a construction to the 4th section of the act concerning boats and vessels of 1835—the language of which is preserved in the corresponding section of the same act in the revisions of 1845 and 1855—and it is a legitimate conclusion that the construction given to the act by the court has received the sanction of the legislature, inasmuch as the two last revisions were made with knowledge of the decision, without changing the phraseology of the section. Furthermore, the syllabus of the cases above cited is contained in the notes appended to the 4th section by the revisers of 1855, which shows that the old law was readopted with full recognition of the construction it had received. The process against a boat, unlike an ordinary summons, commands the officer to take it into his possession, and unless bonded it is sold, with but little delay, before the suit is determined; and there is therefore some reason for requiring greater particularity and a stronger prima facie case for seizing a vessel than would be necessary in a suit commenced by ordinary summons.

It was remarked in the case of the Steamboat Raritan v.

Smith, 10 Mo. 527, that, as our system of proceeding *in rem* against vessels had its origin in the maritime law, it was proper to look to that law for the principles of decision in questions not regulated by statute; and we may suppose that the court, in the case of the Steamboat Elk, intended to adopt the analogous rule that exists in some of the admiralty courts, which requires libels praying for warrants of arrest in *personam* or *in rem* to be verified by the affidavit of the libellant, and that when the affidavit is made by an agent he must state his means of knowledge of the facts sworn to. The rule of practice, which is called in question in this case, has been so long established and is so well known that we do not feel warranted in disturbing it, and the judgment will therefore be affirmed; Judge Scott concurring. Judge Napton absent.